# CIRCUIT COURT OF BALTIMORE CITY.

Filed July 20, 1908.

GOTTLIEB, KNABE & COMPANY OF BALTIMORE CITY ET AL.
VS.
CHARLES MACKLIN ET AL., COMPRISING THE FIELD OFFICERS OF THE FOURTH REGIMENT OF INFANTRY OF THE MARYLAND NATIONAL GUARD, AND THE MAYOR AND CITY COUNCIL OF BALTIMORE, ETC.

*Carroll T. Bond* and *Marbury & Gosnell* for plaintiffs.

*Hill, Ross & Hill* and *N. Rufus Gill & Sons* for defendants.

ELLIOTT, J.—

This cause has been instituted by certain corporations which own and maintain in the City of Baltimore buildings and halls devoted to the purpose of being rented for concerts, meetings, exhibitions and other entertainments, against certain persons described as the Field Officers of the Fourth Regiment Infantry of the Maryland National Guard and the Mayor and City Council of Baltimore.

The object of the bill is to secure the issue of an injunction preventing the use of a certain building owned by the Mayor and City Council of Baltimore, and located on West Fayette street, between Paca and Greene streets, and rented by it to the other defendants for the purpose of being used as the armory of the regiment

above named which other defendants it is alleged are about to use the said building for the purposes for which the buildings of the plaintiffs are maintained.

The burden of the complaint made by the plaintiffs is that such proposed use of said building is not only beyond the power of the Mayor and City Council of Baltimore, and hostile to the objects for which said building was leased by it, but that such use of it necessarily brings said building in competition with the buildings owned by the plaintiffs in such a way as to deprive them of income which would otherwise accrue to them from the use and rental of their own buildings.

To the bill filed by the plaintiffs demurrers have been interposed by the defendants and the question is raised as to whether or not the plaintiffs have stated a case which authorizes this court to interfere by its writ of injunction.

It goes without saying that if the proposed or suggested use of the building hereinbefore referred to is such as neither of the parties defendant are authorized or permitted in law to make of it, then this court has the power to enjoin such use either upon the application of a citizen and taxpayer of the Mayor and City Council of Baltimore or at the instance of some plaintiff suffering special damage by such illegal and unauthorized use.

The question of primal importance therefore is, as to whether or not the suggested use of a building owned by municipality of Baltimore, and leased by it to a militia regiment for the purpose of an armory is illegal and ultra vires.

To put the matter in another form the question is as to whether or not the City of Baltimore owning property which has ceased to be necessary for public purposes, may or may not instead of selling the property, rent it to persons or corporations who might use it in such a way as to bring it in competition with the enterprises of individual and private citizens or taxpayers.

Answering this question, it would seem that there can be no good reason why the Mayor and City Council of Baltimore should be compelled immediately upon the disuse of a public building to dispose of it by sale rather than by lease, and even were it evidently a better business proposition to sell rather than to lease, I know of no power in an equity court which would justify it in enforcing a substitution of its own opinion in the place and stead of that of the legally constituted authorities of the municipality.

And so it would seem that no injunction should be issued by this court to prevent a disposition by the municipality of its unused property, so long as such disposition is not of itself illegal or violative of the rights of the citizens generally, even though the result of such disposition might be injurious to the business opportunities of some of such citizens.

The principals above suggested seem to be clearly established and warranted by the decision of the Court of Appeals of Maryland, in the case of Rittenhouse vs. The Mayor and City Council of Baltimore, as reported in 25th Md., pages 346 and 347. That decision clearly recognizes the right of a municipality to hold property other than that used by it for municipal purposes and to deal with it as any private citizen or other proprietor might do.

There is, however, another question remaining for decision and that is, as to whether or not granting the right of the municipality to lease its property not used by it for municipal purposes, to the Field Officers of the Fourth Regiment for the purposes of an armory, said field officers can be enjoined from using it for purposes other than of an armory.

It would probably not be productive of any practical or beneficial result were this court to enter into any fine distinctions as to what are or might be the purposes of an armory and it would certainly have the tendency to involve this court in any number of perplexing details should it give its adherence to the theory that it would be invoked, first, to determine whether the field officers were strictly keeping within their powers, and then to prevent any misuse of those powers so far as using the building only for the purposes of an armory would be concerned. Many things which might not appeal to the court, inexperienced as it would likely be in military affairs, might be imme-

diately recognized by the field officers as necessary to the very existence of an armory, and the consciousness of this fact might well be calculated to make the court hesitate before interfering.

The situation, however, in this case is, after all, not really so difficult as might at first appear.

A plain simple statement of it is that the Field Officers of the Fourth Regiment have been renting and propose to rent the armory building at a time when not in actual use by the regiment and in such a manner as not to interfere with such use, for the purpose of raising additional income to be devoted to the purposes of the regiment and it happens by such renting the building is brought in competition with those owned by the plaintiffs.

It is true that the bill alleges that such renting tends to increase the risk of injury to the building and to the property of the State located therein, but even were that so it is entirely possible to insure against such additional risk, and even were it not, it would seem to be a matter rather for the executive departments of the city and State than for the judicial.

And so we must come back to the single consideration as to whether or not the renting of the Fourth Regiment Armory for concerts, public exhibitions and entertainments is to be enjoined by this court, because such use of it will be in competition with other buildings located in the city, constructed and maintained for the same purposes and owned by private citizens, whether individually or as stockholders in corporations.

Addressing myself to this single question, while remembering and recognizing the great and proper powers vested in a Court of Equity to restrain and prevent injuries which are likely to be the result of an unwarranted use of power or to flow from illegal and invalid acts of individuals or of the public authorities, I am unable to see that there is anything alleged or involved in the cause instituted by the plaintiffs which calls for the intervention of an equity court.

It follows, therefore, that the demurrers filed by the defendants must be sustained.